IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

JAMES HARDY, JR.; HARDY RESOURCES
LLC; JOHN HARDY; EVERGREEN PROCESSING, LLC,
formerly B&H RESOURCES, LLC; MARY HARDY;
HARDY ENERGY SERVICES, INC.; ELITE
COIL TUBING SOLUTIONS LLC; and
NORTHSTAR FARMS LLC

                                          PLAINTIFFS

v.                  Case No. 1:09-cv-41-DPM

HELEN BARTMESS, Executrix of the
Estate of George Bartmess

                                          DEFENDANT

ORDER

A failed venture to mine valuable sand for fracking has resulted in a tangled lawsuit. On referral, the Honorable H. David Young has ably handled a host of preliminary matters and disputes. Pending for decision are two recommendations from Magistrate Judge Young: that the Court should grant in part and deny in part Defendant's motion for judgment on the pleadings, *Document No. 178*; and that the Court should grant Plaintiffs' motion to file a second amended complaint, *Document No. 190*. Objections to

both recommendations have triggered this Court's *de novo* review. FED. R. CIV. P. 72(b)(3).

**1. Some General Points.** This case is two and a half years old. It seems mired in unnecessary complexity, paper, and contentiousness. The docket, for example, contains some 200 entries. What this case needs most is resolution. The Court continued the last trial date because it was scheduled to try a criminal case. Trial is reset for 13 February 2012 in Batesville. That date will stick absent extraordinary circumstances. An amended scheduling order will issue soon. The Court—with many thanks—withdraws the reference to Magistrate Judge Young. The Court does so because it needs to get deeper in this case before trying it.

The Court will hold a status conference with all counsel on 20 October 2011 at 1:00 P.M. in Room 155 of the Richard Sheppard Arnold United States Courthouse in Little Rock. At that conference, the Court requests the Hardy Interests to explain which facts support which of the remaining claims and to consider abandoning duplicative claims to narrow the issues for trial. The Court also requests both parties to come prepared to discuss whether dispositive motions are planned and, if so, how they can be handled most

efficiently. If the parties anticipate evidentiary motions on key issues, the Court would benefit from hearing about these items too.

**2. Motion for Judgment on the Pleadings.** The parties agree on the applicable law about the pending Rule 12(c) motion: the Court takes the pleaded facts as true and asks whether this is the unusual case where the complaint demonstrates "some insuperable bar to relief." *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995) (omitting quotation and discussing identical standard for 12(b)(6) motion); *see also Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009). The parties also agree that the Court may consider matters which, though outside the amended complaint, are necessarily embraced by it. *Noble Systems Corp. v. Alorica Central, LLC*, 543 F.3d 978, 982 (8th Cir. 2008). Judge Young concluded that three documents and one set of documents are so embraced. *Document 178, at 5*. No one objects to this conclusion; and the Court agrees with it.

These incorporated materials are the following:

- B & H Resources, LLC Membership Interest Purchase Agreement;
- Buy-Sell Agreement (600+ Acre Tract);
- Assignment of Buy-Sell Agreement; and

- E-mails, Draft Deeds, and Other Documents About 105-acre Tract.

Judge Young's summary of the complaint's detailed allegations and the parties' complicated agreements is helpful and well done. Without repeating it, the Court adopts that summary in general with the exceptions noted. Believing the parties agreed that the Membership Interest Purchase Agreement, the Buy-Sell Agreement, and the Assignment were fully integrated, Judge Young read these documents together and proposed winnowing the Hardy Interests' claims based on various provisions of the three agreements. But the Hardy Interests' objections belatedly clarify, *Document No. 179-1, at 19-22*, that they do not agree about integration or merger, and they challenge Judge Young's reading of various provisions.

With one exception, the Court respectfully disagrees with Judge Young's recommendation on complete integration. Here is the exception: the LLC Membership Interest Purchase Agreement unequivocally "supercedes, cancels and revises all prior agreements between the parties including those contained in Exhibits 'C' and 'D.'" This provision torpedoes any contract claim by the Hardy Interests based on any prior agreement, oral or written. The active complaint alleges that the Membership Interest Purchase

-4-

Agreement (including the clear merger clause), though signed by John Hardy and B&H rather than all plaintiffs, was part of a multi-part deal approved by the parties, including all the Hardy Interests. *Document No. 30, at ¶163.* The Court thus adopts Judge Young's recommendation on this particular point: the parties' long series of agreements leading toward the LLC and during the LLC's operation were integrated into the Membership Purchase Agreement. The parties made, in the Restatement's term, a partially integrated agreement. Their agreement was only partially integrated because some of the parties also made related but separate agreements for consideration—namely the Buy-Sell and the Assignment. RESTATEMENT (SECOND) OF CONTRACTS §§ 210, 216 (1981).

  The Buy-Sell Agreement and the Assignment are related to the Membership Purchase Agreement. So the parties' various agreements must be read together. *Integon Life Insurance Co. v. Vandegrift*, 11 Ark. App. 270, 276-77, 669 S.W.2d 492, 495 (1984). The Court agrees with the Hardy Interests, however, that the record shows a multi-part deal without the full integration of all three agreements. First, each recites that it is the entire agreement on the subject matter—which is correct in a narrow sense and incorrect in a broader

sense, because all these agreements were part of the effort to push Bartmess to the margin of the development project. Second, it also now appears undisputed that George Bartmess balked at signing the Membership Interest Purchase Agreement in December 2008 and did not sign until the February 2009 closing. Finally, the Membership Interest Purchase Agreement and the Buy-Sell lack any internal reference to each other, though they mention lots of other documents and agreements; instead, each document recites that no unmentioned agreement exists between the parties that affects each agreement. The sum of all this, the Court concludes, is no complete integration.

Whatever the correct answer on integration, neither the no-breach-exists language in the Buy-Sell nor the waiver in the Assignment cuts as deeply as Judge Young concluded. This means that the Hardy Interests' tort claims about George Bartmess's alleged misdeeds survive the motion for judgment on the pleadings. In the precedent's words, the agreements create no "insuperable bar" to the tort claims. *Frey*, 44 F.3d at 671.

The Buy-Sell agreement about the 600+ acres of land was made between James Hardy (the buyer) and George and Helen Bartmess (the seller). Put to

one side that the buyer was not B&H Resources, LLC or *John* Hardy (the other member/manager of that entity with George Bartmess). James and his companies were part of the Hardy Interests involved in this venture, and were acting (the Court reasonably infers) for the group. The Buy-Sell says the following in paragraph 5[d]:

> Buyer [James Hardy] and Seller [Mr. and Mrs. Bartmess] agree that Buyer and Seller entered into a de facto partnership, with other partners, for the purpose of exploring and developing a sand mining operation, which resulted, in part, in the creation of B&H Resources, LLC. Buyer and Seller agree that Buyer and Seller have entered into this transaction in good faith and fair dealing with one another and neither are in breach of any duties owed to the de facto partnership or each other, as a result of this transaction.

What was "this transaction"? The introductory phrase of paragraph 5 leaves no doubt: it was the sale of the 600+ acres, not the venture as a whole or the *de facto* partnership. After reciting dollar consideration, legal descriptions, and the like in paragraphs 1-4, the parties said that "[a]s part of the consideration for this transaction, the parties have made certain other commitments and agreements, as recited [in the subparts to section 5]." In 5[d], the Hardy Interests (through James) and Mr. and Mrs. Bartmess agreed on three things: the *de facto* partnership existed; the deal on the 600+ acres

was done in good faith; and their deal on this real property did not put them in breach of any duty to each other or their *de facto* partners. Contrary to the recommendation, there was no agreement here that George Bartmess was not in breach of *any duty* to the *de facto* partnership or the LLC. This reading gives inadequate weight to the clear last phrase of the parties' agreement on this issue: they said "as a result of this transaction." That phrase limits the reach of the parties' agreement in the Buy-Sell about no existing breach of duties.

The point is similar on the Assignment. James Hardy assigned the Buy-Sell about the 600+ acres to B&H Resources, LLC. James, Mr. and Mrs. Bartmess, and B&H agreed to the assignment. And the assignment contained a waiver. The Court declines to adopt Judge Young's conclusion that this waiver covered whatever non-contract duties George Bartmess had to the Hardy Interests before the Buy-Sell Agreement.

The Assignment said this about waiver:

> For good and valuable consideration and cause, it is hereby understood, agreed and resolved that JAMES P. HARDY, JR., has agreed to waive any and all claims against GEORGE BARTMESS and HELEN BARTMESS, related to the Buy-Sell Agreement entered into between James P. Hardy, Jr., and George Bartmess, dated December 10, 2008, with initialed amendments thereto, as an incident to this Agreement.

In an echoing sentence, the Bartmesses agreed to a similar waiver. James was

-8-

acting for all the Hardy Interests. B&H Resources also agreed to the waiver by consenting to "this assignment," which contained the waiver.

The parties were waiving claims and potential claims about the Buy-Sell covering the 600+ acres, not all claims and potential claims about their entire tangled relationship. The Bartmesses' contrary reading puts more weight on this provision than it can bear. The Assignment did not extinguish pre-existing tort claims or fiduciary duties unrelated to the Buy-Sell transaction. The Hardy Interests' claims about breach of fiduciary duty, untoward competition, and fraud therefore survive.

Now to the 105-acre tract claims. Here the Court adopts Judge Young's reasoning and conclusion as its own. The statute of frauds bars the Hardy Interests' claim that an enforceable contract existed covering the 105-acre tract. George Bartmess's handling of the option and his profiting from his friend's purchase of the land are relevant evidence on the alleged breach of fiduciary duty and like tort claims; but Bartmess is entitled to judgment on the pleadings on any contract claim about the 105 acres.

Last, Bartmess now says she is not pursuing any contract claim on the Buy-Sell, much less a claim about foot-dragging on the legal description. The

Court, in any event, agrees with Judge Young that Bartmess has no claim about that agreement on the pleadings.

**3. Motion to Amend Complaint.** Guided by Rule 15, and after considering all the material circumstances, the Court denies the motion. First, the Hardy Interests could have sued Bruce Bartmess long ago about interfering with the development. They did sue him in the related Louisiana litigation. The Court sees prejudice to the Defendant in having to deal so late in this case with this new wrinkle. At the minimum, the proposed amendment would create a web of disputed legal issues, not least about whether defenses available to the Bartmess Estate cloak Bruce too. More briefing is the last thing this case needs. Second, the Hardy Interests can pursue the new arson claim in another case. Third, while perhaps not futile, the new claim seems thin. Fourth, it is time to get this old case tried. More discovery and motions on a new claim will only delay that needed resolution. Of course there would be some benefit in resolving the new claim now, but the cost is too high. This is a close call, but the Court declines to follow Magistrate Judge Young's suggestion on this issue.

\* \* \*

The motion for judgment on the pleadings, *Document No. 94*, is granted in part and denied in part. The Court accepts in part and declines in part the related Findings and Recommendation, *Document No. 178*. The motion to amend, *Document No. 169*, is denied. And the related Findings and Recommendation, *Document No. 190*, are declined.

So Ordered.

_____
D.P. Marshall Jr.
United States District Judge

\_\_\_\_9/26/2011\_\_\_\_