IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

JAMES HARDY, JR.; HARDY RESOURCES,
LLC; JOHN HARDY; EVERGREEN PROCESSING, LLC,
formerly B&H RESOURCES, LLC; MARY HARDY;
HARDY ENERGY SERVICES, INC.; ELITE
COIL TUBING SOLUTIONS, LLC; and
NORTHSTAR FARMS, LLC                                        PLAINTIFFS

v.                       No. 1:09-cv-41-DPM

HELEN BARTMESS, Executrix of the
Estate of George Bartmess                                    DEFENDANT

ORDER

1. After nearly three years of disagreement, in January 2012 this case settled. № 262. Now Helen Bartmess says the Hardys have violated three provisions of the parties' settlement agreement, and she moves to enforce. The Court retained jurisdiction, as the parties requested, to enforce the agreement. The Court held a hearing on the motion some months ago. All parties agreed there that two of the alleged breaches — maintenance of the road and the engineering study — are marginal. Consistent with its prior ruling about minor violations of the parties' settlement agreement, the Court sets those issues aside and denies Bartmess's motion on them without

prejudice. The core dispute is about two tracts of land—a smaller (the 377) and a larger (the 686)—and the reversion rights about those tracts. The parties agreed, as part of their settlement, to extend all deadlines that triggered existing reversion rights under the membership purchase agreement to 1 August 2013. The extension was designed to give the Hardy Interests breathing room to start mining operations on the property. The membership purchase agreement provides: "If no mining of frac sand has commenced within 3 years of the date of this agreement, then this agreement shall be at an end and all lands transferred to B&H Resources, LLC shall be retransferred back to George and Helen Bartmess free and clear of all liens and encumbrances[.]" № 4-3 at 1-2.

**2.** Certain facts are undisputed. Under the terms of the settlement agreement, the Hardy Interests had to start mining sand by the beginning of August 2013. They didn't. The membership purchase agreement expressly provided for B&H Resources' return of the 377 to the Bartmesses— at a time certain if no mining began, or thereafter if it did. The Court previously concluded that the membership purchase agreement fully integrated the parties' agreements leading up to the formation of the LLC, and superseded all prior agreements on those issues. № 201 at 4-5.

Based on all these facts, the 377 reverts back to Bartmess now. Because

there was a failure to mine, the membership purchase agreement does not condition the reversion on Bartmess paying the Hardy Interests for the 377. It's not a repurchase. (Any after-mining repurchase would have been for nominal value—one dollar. № 4-3 at 6.). The Court sees no real ambiguity. Whatever murkiness there may be in the word "retransferred," № 4-3 at 2, the parties' agreement as a whole dispels it. Bartmess is entitled to the 377 without paying for it; this was part of the agreed consequence of the Hardy Interests' nonperformance.

**3.** But what about the 686? This dispute calls into question the relationship between several documents, including the buy-sell agreement, the deed to the 686, and the membership purchase agreement. № 4-2, 288-2, & 4-3. Bartmess says the 686 is subject to the terms of the membership purchase agreement and its reversion clause. The Hardy Interests say that the 686 was transferred through a separate buy-sell agreement and deed, and these documents didn't include a reversion clause. Bartmess points, in response, to the deed on the 686, which mentions the membership purchase agreement.

The meaning of a contract, even an ambiguous one, is a question of law—unless disputed extrinsic evidence is needed to resolve any ambiguity.

*Smith v. Prudential Property & Casualty Co.*, 340 Ark. 335, 341, 10 S.W.3d 846, 850 (2000). The parties had, as the Court previously held, a deal of many parts that were partially integrated: all the documents were final; but they weren't exclusive. № 201 at 5-7; RESTATEMENT (SECOND) OF CONTRACTS §§ 210, 216. The many parts create ambiguity about what happens now to the 686. The parties' intentions, though, can be gathered from all their many documents and the undisputed parts of their tangled dealings. The agreements were components of a single project and were executed more or less contemporaneously — all within about two months. Marginal disputes about dates are immaterial.

The Court need not re-enter the integration thicket. As the Court held before, the membership purchase agreement was completely integrated — superseding all prior agreements, dealings, and negotiations on a certain subject: organizing and running the contemplated mining operations. № 201 at 6. The no-breach-exists terms in the buy-sell agreement and the assignment did not bar certain Bartmess claims. *Ibid.* Those related agreements embodied other material parts of the parties' tangled deal. The Bartmesses and the Hardy Interests made all their agreements, and executed all these documents, across the two contentious months it took to finalize their

deal easing Bartmess out of development operations. All these documents are contemporaneous in the legal sense. They must all be read together to understand the parties' deal. *Integon Life Insurance Co. v. Vandegrift*, 11 Ark. App. 270, 276-77, 669 S.W.2d 492, 495 (1984). Thinking in terms of the integration doctrine, whether complete or partial, is simply not a particularly helpful way of answering the current questions presented.

There are no disputes in the extrinsic evidence that a fact finder must resolve to discern the meaning of the contract here. If no mining occurred, the parties intended that the mineral rights in the 686 would revert to Bartmess without payment. They also intended that Bartmess would have the option of repurchasing the surface rights in the 686 for $686,150.00, the price the Hardy Interests paid for it. The 686 is thus subject to the membership purchase agreement's reversion clause with an important qualification arising from the side deal on the 686.

First, the current dispute is best understood as a matter of incorporation and interpretation, not integration. The 686 purchase started out as a related side deal between James Hardy and Bartmess. By virtue of the last-minute assignment, it was consummated as a B&H Resources/ Bartmess transaction. The deed made the "conveyance . . . subject to *certain* requirements and

obligations pursuant to an LLC Membership Interest Purchase Agreement dated December 9, 2008, between John Hardy, George and Helen Bartmess and B&H Resources, LLC or as may be amended thereafter." № 288-2 at 3 (emphasis added). That sentence establishes the parties' intent to incorporate some terms of the membership purchase agreement, *Ingersoll-Rand Co. v. El Dorado Chem. Co.*, 373 Ark. 226, 233, 283 S.W.3d 191, 196 (2008), but leaves for interpretation the meaning of the parties' chosen word "certain." *Stokes v. Roberts*, 289 Ark. 319, 323, 711 S.W.2d 757, 759 (1986). There's ambiguity here. What requirements and obligations?

The Hardy Interests' pre-existing rights to mine sand from the 686, coupled with the membership purchase agreement's terms, remove the ambiguity. In one provision, the parties specified the royalty payment schedule and what would happen if the Hardys failed to mine: "all lands" transferred by Bartmess to B&H Resources would be transferred back. № 4-3 at 1-2. No mining equals no royalties equals no continued right to the minerals. There was partial incorporation of the membership purchase agreement in the deed on the royalty/reversion issue. *Ingersoll-Rand Co.*, 373 Ark. at 233, 283 S.W.3d at 196. This is the only sensible intention discernible. And it flows from reading all these contemporaneous transactional

documents together. *Integon Life*, 11 Ark. App. at 276-77, 669 S.W.2d at 495; *Siegel v. Halley*, 2010 Ark. App. 106, *2-3 (2010).

Second, Bartmess's merger and estoppel-by-deed arguments prove too much. If Bartmess were correct, then the deeds begin and end the matter; the Hardy Interests are entitled to all right, title, and interest in both the 377 and the 686 — including all mineral rights in both tracts because they weren't reserved. Neither side argues for that unconscionable deal, one no sane person would make and no honorable person would accept. *Geldermann & Co. v. Lane Processing, Inc.*, 527 F.2d 571, 575 (8th Cir. 1975). Merger and estoppel by deed are stout doctrines. *Bicknell v. Barnes*, 255 Ark. 697, 700, 501 S.W.2d 761, 763 (1973); *Cummings v. Shults*, 91 Ark. App. 48, 52, 207 S.W.3d 572, 576 (2005). But each is subject to mutual mistake; and if the parties' deeds require that — after not keeping their promises to mine — the Hardy Interests get everything, then the parties made a mutual mistake in those deeds. *Statler v. Painter*, 84 Ark. App. 114, 119, 133 S.W.3d 425, 428 (2003).

Third, Bartmess is only entitled to reversion of the mineral rights in the 686 with an option to repurchase the surface rights. The membership purchase agreement has to be construed as a whole, and in light of the buy-sell agreement about the 686. *Integon Life*, 11 Ark. App. at 276-77, 669 S.W.2d

at 495. The membership purchase agreement is chock-full of references to the 377. E.g., № 4-3 at 4, 5, & 6. Not so on the 686. The buy-sell agreement informs the parties' rights and duties. Here again, merger and estoppel by deed provide no compelling answer because the 686 deed is an incomplete expression of the parties' contract as a whole. One has to look through the deed to the partially incorporated membership purchase agreement; and then one must consider the buy-sell. In the usual case, the sales contract merges into the deed. But this is the unusual case where the deed ambiguously pulls in some of yet another agreement, whose meaning is revealed, in part, by illumination from the buy-sell agreement. The Hardy Interests paid what appears to be a fair market price for surface rights in the 686. Bartmess must, as the parties' agreed, repay that $686,150.00 if she wants the surface rights back too. That was the parties' intention. *Roetzel v. Coleman*, 2010 Ark. App. 206, *7, 374 S.W.3d 166, 171 (2010).

\* \* \*

The buy-sell agreement contains no firm deadline for Bartmess to exercise the repurchase option on the surface rights to the 686. The law therefore implies a reasonable time to do so. Bartmess must advise the Hardy Interests of her decision by 7 October 2014. Thereafter, Bartmess shall prepare

deeds conforming to this Order and her decision for the Hardy Interests' consideration. The parties shall present the deeds to the Court for approval by 24 October 2014. On the same timetable, Bartmess shall propose to the Hardy Interests the form of some document to confirm the termination of the membership purchase agreement and clear title.

* * *

Motion to enforce, № 288, granted in part and denied in part. Given that both sides have prevailed in part, the Court declines to award any attorney's fees.

The Court notes the recent motion of the Hardy Interests' lawyer to withdraw. That motion, № 310, is denied without prejudice. All but three of the plaintiffs are entities, which must be represented by counsel. We're very close to final resolution and judgment in this case. At a minimum, new counsel for the plaintiff entities must appear to keep things moving forward. The Hardy Interests' lawyer is free to renew his motion, with a supplement under seal, after this Order is implemented; but the immediate appearance of additional counsel would resolve all difficulties on this front, and the Court would immediately allow withdrawal without necessity of a new motion.

So Ordered.

_____
D.P. Marshall Jr.
United States District Judge

16 September 2014